```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                SOUTHERN DISTRICT OF GEORGIA
                      AUGUSTA DIVISION
```

WILTON CLINTON MEEKS, III,       *
                                 *
    Plaintiff,                   *
                                 *
        v.                       *      CV 124-022
                                 *
SECRETARY OF THE DEPARTMENT OF   *
HEALTH AND HUMAN SERVICES,       *
                                 *
    Defendant.                   *
                                 *

# O R D E R

Before the Court is Plaintiff's appeal of the Department of Health and Human Services, Departmental Appeals Board, Appellate Division's ("DHHS Appellate Board") decision upholding his exclusion from working in any facility that receives Medicare, Medicaid, or any other federally funded health care program. (Doc. 1.) For the following reasons, the DHHS Appellate Board's decision is **AFFIRMED**.

## I. BACKGROUND

The underlying facts are largely undisputed. Plaintiff opened his business, White Columns Consulting Incorporated, doing business as Liberty Square Pharmacy ("Liberty Square"), in October 2004. (Doc. 12, at 217.) Prior to the events giving rise to this action, Plaintiff was the sole owner of Liberty Square, where he

1

also worked as a pharmacist. (Id. at 159-60.) In 2012, while working at Liberty Square, Plaintiff developed an addiction to opioids he was prescribed after a surgery. (Id. at 216; Doc. 1-2, at 36-48.) Plaintiff's addiction led to a series of unfortunate events. He began using unprescribed opioids at his disposal by virtue of his position at Liberty Square and, relatedly, began failing to keep proper records at Liberty Square. (Doc. 12, at 66-67, 217.) Eventually, Plaintiff's faulty record-keeping, which violated the Controlled Substances Act, attracted the attention of the Drug Enforcement Agency ("DEA"). (Id. at 217.) Consequently, on or about August 1, 2018, Plaintiff voluntarily surrendered his pharmacist license. (Id. at 47, 565-66.) Shortly after, on August 23, 2018, Plaintiff admitted himself into an addiction treatment facility, which he completed on November 12, 2018. (Id. at 45.) On June 13, 2019, Plaintiff transferred ownership of Liberty Square to Teresa Lamb so she could continue to operate the business. (Doc. 1-3, at 29.) And on November 27, 2019, he entered into a settlement agreement with the DEA requiring him to pay $150,000 for violating the Controlled Substance Act. (Doc. 12, at 457-63.)

On February 5, 2019, Plaintiff was charged in this Court with one count of acquiring a controlled substance by misrepresentation, deception, or subterfuge in violation of 21 U.S.C. § 843(a)(3), also stemming from his use of unprescribed opioids. (Id. at 559.) On March 19, 2019, Plaintiff entered a

2

guilty plea, which provided the following factual basis for the charge:

> Beginning at least as early as January 1, 2017 and continuing until on or about July 1, 2018, in the Southern District of Georgia, [Plaintiff] knowingly and intentionally acquired Oxycodone, a Schedule II controlled substance, by misrepresentation, deception, or subterfuge, to wit, that [Plaintiff] acquired Oxycodone that [Plaintiff] knew had not been prescribed to [Plaintiff] from a pharmacy under [Plaintiff]'s control for [Plaintiff]'s personal use, in violation of Title 21 United States Code, Section 843(a)(3), and that [Plaintiff]'s guilty plea constitutes proof as to that Count.

(Id. at 49.) On September 6, 2019, the Court accepted Plaintiff's guilty plea and sentenced him to three years of probation. (Id. at 568-69.) Just over a year later, on November 12, 2020, the Court granted early termination of Plaintiff's probation. United States v. Meeks, No. 1:19-cr-012, Doc. 25 (S.D. Ga. Nov. 13, 2020).

Around February 12, 2021, Plaintiff requested reinstatement of his pharmacist license with the Georgia State Board of Pharmacy (the "Board"), and on May 25, 2021, the Board reinstated Plaintiff's license subject to a three-year supervised probationary period requiring compliance with various terms and conditions. (Doc. 12, at 574-82.) Despite reinstatement of his license, Plaintiff's past addiction continued to impact his career as a pharmacist. (Id. at 43.) On April 29, 2022, Plaintiff received a letter from the Inspector General of the United States Department of Health and Human Services (the "IG") excluding him from participation in Medicare, Medicaid, and all other federal

3

health care programs for a term of eight years under 42 U.S.C. § 1320a-7(a)(3)-(4). (Id.) On August 15, 2023, Plaintiff received a second notice amending his exclusion to be for a term of seven years. (Id. at 586.)

On May 6, 2022, Plaintiff requested a hearing with an Administrative Law Judge ("ALJ") regarding the IG's decision to exclude him. (Id. at 9, 36-40.) The ALJ conducted several conferences, reviewed pre- and post-hearing briefings and evidence, and held a hearing on February 1, 2023. (Id. at 9.) On September 25, 2023, the ALJ affirmed the IG's exclusion determination under 42 U.S.C. § 1320a-7(a)(3) and found the seven-year term of the exclusion reasonable. (Id. at 7.) Plaintiff timely requested review of the ALJ's decision by the DHHS Appellate Board. (Id. at 28.) On February 1, 2024, the DHHS Appellate Board affirmed the ALJ's decisions, thereby making the IG's decision the final decision of the Secretary of the Department of Health and Human Services (the "Secretary"). (Id. at 24.); see 53 Fed. Reg. 12,993 (Apr. 20, 1988) (providing that the Secretary has delegated the duty of imposing exclusions to the IG). On February 22, 2024, Plaintiff timely brought this action against the Secretary, asking the Court to reverse the decision of the DHHS Appellate Board or, in the alternative, determine the seven-year exclusion is unreasonable and impose a maximum exclusion of five years, beginning in September 2019. (Doc. 1, at 6.) Both Parties have

4

briefed the issues, and this matter is now ripe for the Court's review.

## II. LEGAL STANDARD

Any individual or entity excluded from federal health care programs under 42 U.S.C. § 1320a-7 is entitled to judicial review of the Secretary's final decision as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1320a-7(f)(1). Under 42 U.S.C. § 405(g), the Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Secretary], with or without remanding the cause for a rehearing." In reviewing the Secretary's decision, "[t]he findings of the [Secretary] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted). Questions of law, on the other hand, are reviewed *de novo*. Keefe ex rel. Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995) (citation omitted). In sum, "if the Court finds that there was substantial evidence in support of the Secretary's determination and that the proper legal standards were applied, then the Secretary's decision must be upheld." Kahn v.

Inspector Gen. of U.S. Dep't of Health & Hum. Servs., 848 F. Supp. 432, 436 (S.D.N.Y. 1994) (citations omitted).

### III. DISCUSSION

The Court first addresses Plaintiff's exclusion under 42 U.S.C. § 1320a-7(a)(3), then turns to the length of his exclusion period.

**A. Exclusion Under 42 U.S.C. § 1320a-7(a)(3)**

Plaintiff argues the DHHS Appellate Board's decision affirming his exclusion from participating in any Federal health care program pursuant to 42 U.S.C. § 1320a-7(a)(3) was erroneous for two reasons and should therefore be reversed. (Doc. 15, at 6-14.) First, he argues the conduct to which he pled guilty is not within the scope of 42 U.S.C. § 1320a-7(a)(3) because it is not related to theft or fraud. (Id.) Second, he argues the ALJ and DHHS Appellate Board misconstrued the statute for largely the same reasons. (Id.) The Secretary disagrees, arguing the decision should be affirmed because Plaintiff's criminal conduct falls within 42 U.S.C. § 1320a-7(a)(3). (Doc. 21, at 11-15.) The Court agrees with the Secretary.

42 U.S.C. § 1320a-7(a)(3) provides that the Secretary must exclude

> [a]ny individual or entity that has been convicted for an offense which occurred after August 21, 1996, under Federal or State law, in connection with the delivery of a health care item or service or with respect to any act

6

> or omission in a health care program . . . operated by or financed in whole or in part by any Federal, State, or local government agency, of a criminal offense consisting of a felony *relating to fraud, theft, embezzlement, breach of fiduciary responsibility, or other financial misconduct.*

(emphasis added). The plain meaning of the phrase "relating to" is broad, meaning "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association or connection with." Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992) (quoting BLACK'S LAW DICTIONARY 1158 (5th ed. 1979)). The purpose underlying 42 U.S.C. § 1320a-7, which is to protect federally funded health care programs from "fraud and abuse," and "to protect the beneficiaries of those programs from incompetent practitioners and from inappropriate or inadequate care," supports a broad reading of "relating to." S. REP. 100-109, at 1-2 (1987), *as reprinted in* 1987 U.S.C.C.A.N. 682, 682.

The Court finds substantial evidence to support a determination that Plaintiff's criminal conviction was related to "fraud, theft, embezzlement, breach of fiduciary responsibility, or other financial misconduct," bringing it within the scope of 42 U.S.C. § 1320a-7(a)(3). In Morgan v. Sebelius, a physician sought reversal of the Secretary's decision to exclude him from participating in federally sponsored health care programs pursuant to 42 U.S.C. § 1320a-7(a)(3). No. CIV.A. 3:09-1059, 2010 WL 3702608, at *1 (S.D. W. Va. Sept. 15, 2010), aff'd, 694 F.3d 535 (4th Cir. 2012). The physician pled guilty to violating 21 U.S.C.

7

§ 843(a)(3), the same statute as Plaintiff, for obtaining free samples of hydrocodone from pharmaceutical representatives for his personal use by "fraud," representing that the drugs would be given to patients. Id. The district court affirmed the Secretary's finding that the physician's conduct fell within the scope of 42 U.S.C. § 1320a-7(a)(3) and, accordingly, that the statute mandated his exclusion. Id. at *3. Here, Plaintiff's guilty plea characterized his acquisition of the opioids as being achieved through "misrepresentation, deception or subterfuge," rather than "fraud." (Doc. 12, at 49.) Nonetheless, his criminal conduct was substantively similar to the physician in Sebelius: both, by nature of their professions, deceptively acquired prescription medicine intended for patients to use personally. Moreover, given the broad interpretation of "relating to" and the purposes underlying 42 U.S.C. § 1320a-7(a)(3), the Court finds that conduct involving "misrepresentation, deception, and subterfuge" is sufficiently related to "fraud, theft, embezzlement, breach of fiduciary responsibility, or other financial misconduct." As both the ALJ and the DHHS Appellate Board stated in their opinions, "[t]here is a nexus or common-sense connection between fraud and [Plaintiff's] felony conviction." (Doc. 12, at 31.) This nexus is evidenced by the second element of the underlying criminal statute, which may be satisfied by showing the controlled substance

8

was obtained by fraud, misrepresentation, deception, *or* subterfuge. 21 U.S.C. § 843(a)(3) (emphasis added).

Plaintiff's contention that his conduct did not constitute theft is equally unavailing. First, the statute extends to conduct "*relating to* fraud, theft, embezzlement, breach of fiduciary responsibility, or other financial misconduct." 42 U.S.C. § 1320a-7(a)(3) (emphasis added). As explained above, this is much broader than conduct that falls within the criminal definition of theft. See Morales, 504 U.S. at 383 (explaining the broad scope of the term "relating to"). Moreover, Plaintiff ignores the fact that under Georgia law, a corporate entity is separate from an individual. Commonwealth Fin. Corp. v. Sherrill, 398 S.E.2d 438, 438 (Ga. Ct. App. 1990). Plaintiff's ownership stake and control over the entity does not change this legal separation. See Derbyshire v. United Builders Supplies, Inc., 392 S.E.2d 37, 40 (Ga. Ct. App. 1990) (holding that, in the context of piercing the corporate veil, sole ownership and control do not affect the legal separation of a corporate entity and its owner (citation omitted)). As such, Plaintiff took the pills not from himself, but from Liberty Square. Such conduct has been found to fall within the scope of 42 U.S.C. § 1320a-7(a)(3). See Bowers v. Inspector Gen. of Dep't of Health & Hum. Servs., No. 1:08-CV-159, 2008 WL 5378338, at *1 (S.D. Ohio Dec. 19, 2008) (affirming IG's exclusion of a pharmacist convicted of theft when he took prescription pills from

9

his employer for personal use). Because the DHHS Appellate Board's decision was supported by sufficient evidence and not legally erroneous, its decision regarding Plaintiff's exclusion is **AFFIRMED**.

**B. Length of Plaintiff's Exclusion Period**

In the alternative, Plaintiff argues that even if the exclusion was proper, the length of the exclusion – seven years – is unreasonable and not supported by substantial evidence. (Doc. 15, at 15-16.) Specifically, he asserts the length is unreasonable because mitigating factors are present and because the ALJ relied on distinguishable cases because the excluded individuals served prison time for their underlying criminal conduct. (Id. at 16.) The Secretary argues the seven-year period is not unreasonable because there is substantial evidence to support the aggravating factors that form the basis of the exclusion period and the timing is within the IG's discretion. (Doc. 21, at 15-16.) For the reasons discussed below, the Court affirms the seven-year exclusion period.

The mandatory minimum exclusion period under 42 U.S.C. § 1320a-7(a)(3) is five years, though it may be extended if aggravating factors are present. 42 U.S.C. § 1320a-7(c)(3)(B). Aggravating factors include underlying criminal conduct that was committed over a period of one year or more and a prior criminal, civil, or administrative sanction record. 42 C.F.R.

10

§ 1001.102(b)(2), (6). If aggravating factors are present, the Court may consider two mitigating factors to reduce the period: (1) whether "[t]he record in the criminal proceeding . . . demonstrates that the court determined that the individual had a mental, emotional or physical condition before or during the commission of the offense that reduced the individual's culpability," and (2) whether the individual's cooperation with government officials resulted in others being convicted or excluded, additional cases being investigated or reports being issued, or civil money penalties or assessments being imposed. 42 C.F.R. § 1001.102(c)(2)-(3).

Plaintiff's guilty plea, which he stipulated was "true and accurate in every aspect," makes clear the underlying conduct occurred for a span of greater than one year. (Doc. 12, at 59.) Specifically, it reads that he wrongfully acquired opioids for personal use "[b]eginning at least as early as January 1, 2017 and continuing until on or about July 1, 2018." (Id.) Moreover, Plaintiff does not dispute that he surrendered his pharmacist license, which was, in effect, a license revocation and considered a disciplinary action by the Board. (Doc. 1, at 3; Doc. 12, at 565-66.) As such, there is substantial evidence of two aggravating factors to support the IG's extension of Plaintiff's exclusion period.

11

While Plaintiff argues there are "substantial mitigating factors," he does not point to any conduct or facts in the record that fall within 42 C.F.R. § 1001.102(c)(2) or (3). (See Doc. 15, at 15-16; Doc. 22, at 5-7.) To the extent he relies on the fact his sentence did not include incarceration, this is not one of the mitigating factors considered. See 42 C.F.R. § 1001.102(c)(2)-(3). Moreover, Plaintiff's argument that the exclusion period should have begun in September 2019 is unavailing, as the determination of when an exclusion is imposed is within the discretion of the IG. Seide v. Shalala, 31 F. Supp. 2d 466, 469 (E.D. Pa. 1998) (citation omitted). Thus, based on the foregoing, the Court finds substantial evidence supports the conclusion that neither the IG's decision to exclude Plaintiff for seven years, nor his decision as to when such period began, was unreasonable.

## IV. CONCLUSION

Based on the foregoing, the Secretary's decision is **AFFIRMED**. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendant, **TERMINATE** all pending motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 24th day of April, 2025.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA